## BURNHEIMER BROS. v. HART.

1. Promissory note: COLLATERALS : PAYMENT.   Where a debtor gives his creditor, as collateral security for his debt, the note of a third party, indorsed by himself, and the creditor afterward brings suit upon the note thus received as collateral, and obtains judgment against the parties thereto, including the debtor as indorser thereof, such judgment does not in itself operate as a satisfaction of the original debt, nor constitute a bar to a suit thereon.

2 —— EXTINGUISHMENT.   Nor would the assignment of such collateral judgment from the creditor to the debtor, upon the latter paying to him a certain per cent thereof, operate as a satisfaction of the original debt beyond the amount so paid, unless it was so understood or agreed.

*Appeal from Davis District Court.*

MONDAY, APRIL 12.

PLAINTIFFS declare upon two notes made by defendant in 1860. There was testimony tending to show, that, at the time of making the notes, defendant transferred to plaintiffs as collateral security, a note upon other parties in his favor; that plaintiffs had sued the makers of this collateral note, joining therein the defendant as indorser, and had obtained judgment against all the parties; that plaintiffs and defendant compromised that judgment, the said defendant paying twenty-five per cent of the amount due thereon, and certain attorneys' fees of plaintiffs; which sums were accepted by plaintiffs in full satisfaction of said judgment so far as related to defendant, and thereupon plaintiffs assigned said judgment to defendant.

Upon these facts the court gave and refused certain instructions, and of this action plaintiffs complain. Judgment for defendant, and plaintiffs appeal.

*D. P. Palmer* and *Amos Stoeckel* for the appellants.

*M. H. Jones* and *H. H. Trimble* for the appellee.

WRIGHT, J. — The court instructed the jury that the judgment against the defendant as indorser of the col-

1. PROMISSORY NOTE: collaterals: payment. lateral note was a bar to a suit on the notes thus secured to the extent of such collateral, and that if, therefore, the judgment on such collateral was equal to or exceeded the amount of the notes now in suit, such collateral judgment would be a complete bar to the action.

This could hardly be the law under any state of facts, and is certainly not, under the circumstances disclosed in this record. It in effect makes the collateral contract (or the agreement under which the collateral security was taken), supercede the original or principal one. It gives it a dignity and magnitude never contemplated by the parties, and certainly not by the law. It is, hence, bottomed upon a false assumption. A recovery upon a note may bar a recovery for that which formed the consideration for the note. But that would not be this case. The liability of defendant upon the original note is quite distinct from that upon his indorsement of the instrument which was given in pledge or security for the antecedent or original debt. The contracts are quite distinct. If this is not so, then a failure by plaintiffs to make proper demand and give due notice would not only release the indorser upon that which is a mere incident, but also upon the original or principal undertaking, and certainly this would not be claimed.

In this case, however, we need not go thus far, for

*defendant himself* settled the judgment upon the collateral note, and took an assignment of it.

2. —— extinguishment.

And hence it seems to us, that the true inquiry is, whether this settlement had the effect of paying or extinguishing the original note or indebtedness. It certainly would not, unless it was so agreed or understood. Defendant was the sole debtor as to the notes now in suit. As to them there is no surety. He was the *surety*, as to the note transferred. By agreement the surety in the one case, and the principal in the other, pays so much of the collateral debt, takes an assignment of it, or the judgment rendered thereon, and at once claims that the original debt is extinguished, or, at least, all right of action thereon is barred. If so, then it would be equally true if plaintiff had surrendered or assigned the collateral judgment, without receiving any part of the same. And it would hence occur that though the real and original debtor paid no part of his debt, and though he collected by the consent of his creditor the whole of the collateral judgment, such creditor could not sue him upon the original indebtedness, whatever his other securities, and however important, in view of " homestead " or other rights, that his contract should date anterior to the time of the indorsement of the collaterals. It certainly requires no argument to show the fallacy and injustice of such a position. The *satisfaction* of the collateral debt to the extent of that which it was given to secure might bar a recovery upon the original. But not a *judgment* merely against the collateral debtor, though the original debtor, by reason of his contract of indorsement, should be joined therein. These views substantially dispose of the case. And yet, turning to what is suggested in argument, rather than the record, a single other word seems necessary.

What effect a settlement by plaintiff with the makers

of the note, which he held as collateral, without defendant's consent, might have upon defendant's rights, we need not inquire, as from the whole record it is indisputable that he (defendant) settled with plaintiff, and he cannot therefore complain that he was prejudiced thereby. Whether this settlement included the notes now in suit, was a question of fact fairly submitted to the jury, under apparently correct instructions. And yet we cannot say that the jury may have found for defendant upon this issue, and that therefore the error in the instructions first noticed, contained no prejudice. The doctrine to which counsel refer, to wit, that if a judgement is right upon the face of the whole record, this court will not reverse, for an abstract cause has no application; for the testimony not all being here, we cannot say that the judgment is right. We do not need to indulge in presumptions to find error. The instruction as to the effect of the prior judgment concluded the whole case. It was plain, clear, unambiguous. Under the facts which the testimony tended to establish, the jury had no alternative.

To have found otherwise would have been most manifestly erroneous. The instruction was necessarily calculated to lead to a wrong result, did, it is fairly apparent so lead, and the judgment must therefore be

Reversed.