## Case No. 4,446.

### EMERY et al. v. CANAL NAT. BANK.

[3 Cliff. 507;[1] 7 N. B. R. 217; 6 West. Jur. 515; 5 Am. Law T. Rep. U. S. Cts. 419.]

Circuit Court, D. Maine. April Term, 1872.

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

George F. Emery, and Mattocks, and Fox, for petitioners.

W. L. Putnam, for respondent.

CLIFFORD, Circuit Justice. Undoubtedly the defendants as the holders of the draft and notes might have proceeded separately against the partnership, and the individual member who had become the second indorser, and they would have been entitled to judgment in each suit, though they could have but one entire satisfaction. In the case of a mere joint and several contract, the holder must at law elect a joint or several remedy, but the rule is otherwise where there are distinct contracts, though one may be incidental or collateral to the other, as for example a party may be liable on a bill or note in two or more capacities, and in such a case he may be the object of more than one action on the same bill or note at the suit of the same plaintiff, as where a party is sued jointly with others as a drawer or promisor, and separately as indorser, which is the nature of the bankrupt's liability on the draft and notes in this case. Wise v. Prowse, 9 Price, 393; Byles, Bills, 322; Chit. Bills, 539; 2 Pars. Notes & B. 459.

Precaution was taken by the defendants in this case to secure the joint obligation of the partnership, and the several and separate obligation of one of the partners, as they might lawfully do at the time they discounted the draft and notes. and it is clear that at common law full effect is given in such a case to the respective contracts. Originally the rule established by the English courts excluded double proofs except perhaps in a limited class of cases. It was first promulgated in the case of Ex parte Rowlandson, 3 P. Wms. 405. In a case founded upon a joint and several bond, Lord Talbot at first inclined to think that the petitioner, being a joint and several creditor, ought to be at liberty to come under each of the commissions, provided he received but a single satisfaction; but finally held that the petitioner ought to be put to his election under which of the two commissions he would come. He relied, to support his conclusion, upon the rule of law, which precludes a party from proceeding jointly and severally on the same bond at the same time, and expressly distinguished the case from one decided ten years earlier, in which a creditor was allowed to prove against a firm, and also one of the members, on his separate bond for the same debt, which is the same in principle as the case before the court. Horsey's Case, Id. 23. Unsatisfactory as the reasons given for the rule are, still the rule was adopted and enforced in many subsequent cases. Ex parte Parminter, cited in 1 Atk. 99; Ex parte Bond, Id. 98; Ex parte Banks, Id. 106. Much diversity of opinion has arisen upon the subject in the courts of the parent country at different periods. It was established, said Judge Story, at an early period, but was afterwards departed from, and was again re-established, and it now stands as much if not more upon the general ground of authority and the maxim stare decisis than upon any solid ground of equity or sound reasoning. Other cases adopted the same rule and held that the creditor in such

a case must elect, and that he could not be allowed to prove his debt against both estates. Ex parte Bevan, 10 Ves. 107; Ex parte Hay, 15 Ves. 4. In the first case Lord Eldon said he never could see why a creditor having both a joint and several security should not go against both estates, but regarding the rule as settled otherwise, he denied the right. Exceptions, however, were subsequently admitted in several cases. They were of three sorts: 1. Where the joint creditor was the petitioner for a separate commission against the bankrupt partner. 2. Where there was no joint estate, and no living solvent partner. 3. Where there were no separate debts. Story, Partn. § 378; Collyer, Partn. 963; Ex parte Le Forrest, Mont. & B. 44. Double proof, however, was allowed by the commissioners, and on appeal to the court of review the four judges were equally divided; but the chancellor, on appeal to him, affirmed the judgment of the two judges who were against double proof, placing his decision upon the ground of authority. Ex parte Moult, Mont. Bankr. 337, Mont. & B. 28, Id., 2 Deac. & C. 419.

Efforts were still made to induce the courts to adopt the opposite view, and agitation upon the topic never ceased in the courts till the question was carried to the house of lords, where it was finally determined that double proof should not be allowed in any case, which had the effect to transfer the question from the courts to the legislative department. Double dividends in case of distinct firms with common members, and in case of a sole trader, who was a member of a firm, were allowed by the subsequent bankrupt act of that country, overruling to that extent the decision of the court of last resort. Provision is there made, that where any debtor shall, at the time of adjudication, be liable upon any bill of exchange or promissory note in respect of distinct contracts, as member of two or more firms, carrying on separate and distinct trades, and having distinct estates to be wound up in bankruptcy, or as a sole trader, and also as the member of a firm, the circumstance that such firms are in whole or in part composed of the same individuals, or that the sole contractor is also one of the joint contractors, shall not prevent proof and receipt of dividend in respect of such distinct contracts against the estates respectively liable upon such contracts. Doria & M. Bankr. App. 194. Obviously that section is confined to joint and several bills of exchange and promissory notes, and for that reason was repealed and replaced by a provision more comprehensive and better suited to give all parties their just and legal rights.

By the act of parliament to consolidate and amend the law of bankruptcy, passed the 9th of August, 1869, it is enacted that if any bankrupt is, at the date of the order of adjudication, liable in respect of distinct contracts as member of two or more distinct firms, or as a sole contractor, and also as member of a firm, the circumstance that such firms are in whole or in part composed of the same individuals, or that the sole contractor is also one of the joint contractors, shall not prevent proof in respect of such contracts against the properties respectively liable upon such contracts. Rob. Bankr. App. 579; Bulley v. Bund, Bankruptcy App. 18. Proof was admitted by the registrar in the case of a joint and several promissory note, which was signed by two members of a firm, and by the firm and several other persons. The firm, having become bankrupt, the holder of the note proved the same against the joint estate of the firm, and the separate estates of the two partners who had also signed the note. Appeal was taken from the order of the registrar to the court of chancery appeals, and the court held that the holder was entitled to prove against, and receive dividends from, both the joint estate of the firm and the separate estates of the two partners who had also signed the note and been adjudged bankrupt. It was insisted for the appellants that inasmuch as the last act did not contain the words, "and receive dividends," it required the creditor to elect whether he would receive his dividends from the joint estate or from the separate estates, and that he could not receive them from both; but the court held otherwise, and decided that inasmuch as there was a joint contract by the firm, and a separate contract by members of the firm, the creditor might prove his claim against both estates, and that the whole act was framed on the plan that a right of proof carried with it a right to a dividend. Mellish, J., admitted that the old rule was as contended by the appellants, and that he had some doubts at first whether the section applied to every case of a bill of exchange drawn by a member of the firm on the firm, or of a joint and several promissory note indorsed by the members of a firm, but seeing that the persons called sole traders are also called sole contractors in the same provision, he held that the two designations meant the same class of persons, and that the enactment was intended to include a joint and a several promissory note, and was not to be confined to cases where the parties had executed separate instruments. He enforced that view by various considerations, and in conclusion stated that a joint and several note, though it is one instrument, contains both a joint contract and distinct separate contracts by the several makers, and decided that it was the intention of parliament that wherever there was a joint and separate contract, and joint and separate estates being administered in bankruptcy, the creditor should be entitled to prove against both the joint and separate estates.

Beyond doubt the opposite rule was the old rule in England; but it was never adopted in this country, and it was expressly re-

pudiated by Judge Sprague in Ex parte Farnum [Case No. 4,674], in an opinion of great research and ability. Learned judges in the course of nearly a century and a half since it was first adopted, have often attempted to vindicate the old rule as consonant with the just rights of creditors, but never have succeeded to the satisfaction of the legal profession. Some have attempted to vindicate it by analogy to the inability of the creditor at common law to bring joint and several actions at the same time. Ex parte Rowlandson, 3 P. Wms. 407; Rob. Bankr. 519. Many others assign as the foundation of the rule, that if a joint and several creditor is permitted to prove against both the joint and separate estates, he would draw from the separate estate to the prejudice of the other joint creditors who ought to have equal right with himself in that estate, which would create a preference inconsistent with the principles of the bankrupt law. Ex parte Bond, Atk. 100. Throughout that period, however, the rule has been opposed by many judges as an arbitrary one, and one not founded on any sound principle. Ex parte Bevan, 10 Ves. 107; Ex parte Hinton, De Gex, 550; Ex parte Goldsmid, 1 De Gex & J. 264. Judge Sprague said that he was not able to discover any sound principle upon which it rested, and that it had generally been admitted, even by those who enforced it, that it is as little consonant with justice as with the rules of law.

Attention is very properly called to the fact that he was expounding the bankrupt law of 1841 [5 Stat. 440]; but it is as true now as it was then that the old rule has never been adopted in this country, and that existing contracts have been made under and with reference to the rule of law which gives to a party having two valid obligations the benefit of both, and in view of that consideration he remarked that he did not think himself bound or authorized to set aside a right which he regarded as founded both on law and justice, on account of an arbitrary rule justly reprobated by some of the most eminent judges and jurists in England, and which was never recognized in this country. Story, Partn. § 382; Borden v. Cuyler, 10 Cush. 476. Power to establish uniform laws on the subject of bankruptcies throughout the United States is vested in congress, and congress having executed that power, the question under consideration must depend upon the proper construction of the provision in that behalf in the bankrupt act. Bankrupts, as all experience shows, may be liable at the time of adjudication, upon a bill of exchange, promissory note, or other obligation, in respect of distinct contracts as members of two or more firms carrying on separate and distinct trades, and having distinct estates to be wound up in bankruptcy, or as sole traders, and also as members of a firm, and section 21 of the bankrupt act provides that in such cases "the circumstance

that such firms are in whole or in part composed of the same individuals, or that a sole contractor is also one of the joint contractors, shall not prevent proof and receipt of dividend in respect of such distinct contracts against the estates respectively liable upon such contracts." 14 Stat. 527. Tested by the concluding part of the section as transcribed, section 21 of our bankrupt act is an exact copy of section 152 of the English bankrupt act of 1861, but the introductory parts of the sections differ, as the English act is confined to bills of exchange and promissory notes, whereas our bankrupt act extends in that behalf also to "other obligations;" showing that it was the intention of congress to give it a more comprehensive operation, as indicated by the addition of the words "or other obligation" to the words "any bill of exchange or promissory note," contained in the said English bankrupt act. Two classes of persons are mentioned in the first part of the section, as embraced in the provision, namely, any bankrupt liable upon any bill of exchange, promissory note, or other obligation, in respect of distinct contracts as a member of two or more firms carrying on separate and distinct trades, and having distinct estates to be wound up in bankruptcy. 2. Or as a sole trader, and also as a member of a firm; and the argument for the petitioners is that the term "sole trader" is used in a technical sense, and that it cannot be construed to include a sole contractor, as in the case of the indorsement of a promissory note by a separate member of the firm, which is signed by the firm as promisors. Considered separately, the first part of the section would afford strong support to that proposition; but the whole section must be construed together, and the last part provides that the circumstance that such firms are in whole or in part composed of the same individuals, or that the sole contractor is also one of the joint contractors, shall not prevent such proof and the receipt of dividends; showing to the satisfaction of the court that the term "sole trader" is not used in a technical sense, and that its meaning was intended to be enlarged by the latter part of the section, as was held by the court in the case of Ex parte Hinton, to which reference has already been made. True, the words "sole trader" are not used in the last English bankrupt act, but they were used in the former act, and the court held in the case referred to that those words when considered in connection with the closing part of the section, which is precisely the same as the closing part of the corresponding section in our bankrupt act, meant nothing more than the words "sole contractor," and that the enactment was intended to include a joint and several promissory note, and that it ought not to be confined to cases where the parties had executed separate instruments. Much consideration has been given

to the question by several of the district judges, and in every such case which has fallen under my observation, the judge has come to the conclusion that the rule which allows a party holding two valid obligations, the benefit of both, is founded in law and justice, and that it is sustained by the true construction of section 21 of the bankrupt act. Mead v. Bank of Fayetteville [Case No. 9,366]; In re Bigelow [Id. 1,397]; In re Howard [Id. 6,750]; Mead v. Bank of Fayetteville [supra]. Creditors, before any act of bankruptcy is committed by their debtor, may acquire a right to prove their claim against the joint estate, by one contract, and against the separate estate by another, and it is not possible, it seems to the court, to assign any good reason why a subsequent act of bankruptcy should be held to deprive them of the benefit of their caution and diligence. English judges and legislators have at last come to that conclusion, and there is no good reason why the courts in this country should adopt a rule which at last has been exploded and abandoned in the tribunals where it was first adopted. Their debts are certainly provable, and the estate must, by the express terms of the act, be distributed among all creditors whose debts are duly proved. Bump, Bankr. (5th Ed.) 198; In re Downing [Case No. 4,044]. [In view of all the circumstances, the petition must be dismissed with costs.] [2]